City Club of N.Y. v New York City Bd. of Stds. & Appeals (2021 NY Slip Op 04533)





City Club of N.Y. v New York City Bd. of Stds. & Appeals


2021 NY Slip Op 04533


Decided on July 22, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 22, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith J. Gische,J.P.,
Cynthia S. Kern
Jeffrey K. Oing
Martin Shulman JJ.


Index No. 161071/19 Appeal No. 13937,13937A Case No. 2020-04916, 2020-04917 

[*1]In the Matter of The City Club of New York, Petitioner-Respondent,
v
New York City Board of Standards and Appeals et al., Respondents-Appellants.



 Respondents appeal from the judgment of the Supreme Court, New York County (Arthur F. Engoron, J.), entered November 18, 2020, granting, on the terms set forth in an order, same court and Justice, entered September 25, 2020, the petition brought pursuant to CPLR article 78 to annul the determination of respondent New York City Board of Standards and Appeals, dated October 15, 2019, which affirmed the issuance of a building permit by respondent New York City Department of Buildings allowing respondents Extell Development Company and West 66th Sponsor LLC to proceed with construction, and the appeal therefrom bringing up for review an order, same court and Justice, entered March 20, 2020, which denied respondents' motion to dismiss the petition.




James E. Johnson, Corporation Counsel, New York (Eric Lee, Richard Dearing and Claude S. Patton of counsel), for municipal appellants.
Cyrulnik Fattaruso LLP, New York (Jason Cyrulnik, Paul Fattaruso and Alex Potter of counsel), for Extell Development Company and West 66th Sponsor LLC, appellants.
John R. Low-Beer, Brooklyn and Charles N. Weinstock, New York, for respondent.



OING, J. 


This appeal asks us to resolve a challenge to the determination of the New York City Board of Standards and Appeals (BSA) upholding a Department of Buildings (DOB) permit for a project development near Lincoln Center. Petitioner contends that BSA incorrectly interpreted the applicable provisions of the New York City Zoning Resolution and that therefore the determination is contrary to law and arbitrary and capricious. Supreme Court agreed with petitioner. Respondents BSA and owner appealed.
The development project is a 39-story, 775-foot-high residential and community facility building situated on a zoning lot located within the Special Lincoln Square District, a special-purpose area with its own distinct set of zoning provisions. Respondents Extell Development Company and West 66th Street Sponsor LLC (owner) are constructing the building on the block bounded by West 65th and 66th Streets, Columbus Avenue, and Central Park West. The project will have approximately 130 condominiums atop a 30,000-square-foot community facility space. The building will have four floors for mechanical equipment whose combined height is 198 feet. The lower floors will be occupied by Congregation Habonim, a synagogue founded in 1939 that previously sat on part of the site. In April 2019, after DOB issued the required permits and the building's foundation was completed, the project vested (see Zoning Resolution [ZR] § 11-331).
The project is situated on a zoning lot (54,687 square feet) that straddles two different zoning districts. This type of zoning lot is known as a "split lot," with each zoning district having its own limitations on uses, densities, and building profiles allowed within its boundaries. The northern portion of the zoning lot lies in a C4-7 district, a general commercial district that permits high-density residential and commercial development (35,105 square feet). The southern portion of the zoning lot lies in an R8 district, a general residential district that permits mid-density development (19,582 square feet). The owner created the project's zoning lot by merging these two zoning districts because without the merger the project would be limited to its original proposal of a 27-story residential and community facility building with a total height of 292 feet. Pursuant to the applicable Zoning Resolution provisions, the total floor area permitted on the project site is 548,543 square feet. ZR § 82-34's bulk distribution regulation required that the project had to have at least 60% of the total floor area located below a height of 150 feet (329,125.8 square feet). The project designated 329,131.92 square feet of floor area below 150 feet, slightly more than the 60% requirement.
Petitioner appealed DOB's approval of this project to BSA on two grounds, that the project failed to comply with the applicable bulk distribution regulation, which resulted in a building five or six floors taller than permitted, and that the project's floor-to-ceiling [*2]height for its mechanical spaces was excessive. BSA denied the appeal, and petitioner commenced this article 78 proceeding. Supreme Court granted the petition and annulled BSA's determination on the ground that the approval was contrary to the purpose of the applicable Zoning Resolution provisions, which was "to limit the height of buildings" in the Special Lincoln Square District. We now reverse.
ZR § 77-01 provides that the split-lot regulation applies "[w]henever any zoning lot is located in two or more districts in which different uses are permitted, or in which different use, bulk, accessory off-street parking and loading, or other regulations apply." In that circumstance, ZR § 77-02 mandates that "each portion of such zoning lot shall be regulated by all the provisions applicable to the district in which such portion of the zoning lot is located."
The split-lot provisions are triggered for the project's zoning lot given that the two districts have different zoning regulations. Petitioner argues that the ZR § 82-34 bulk distribution regulation is not applicable to the project's R8 zoning district because it is limited to the C4-7 zoning district. The result would prohibit a transfer of floor area square footage across R8's zoning district boundary lines to C4-7 zoning district. Prohibiting the transfer would undermine the construction of the 39-story building because the project would not have the required area square footage even after the merger of the two zoning districts.
This Court has held that a split lot is treated as a single lot when assessing compliance with a zoning requirement that applies equally to both zoning districts of the split lot and that the split-lot provision is applied on a "regulation-by-regulation basis" (see Matter of Beekman Hill Assn. v Chin, 274 AD2d 161, 174-178 [1st Dept 2000], lv denied 95 NY2d 767 [2000]). ZR § 82-34, the relevant bulk distribution regulation, provides that "[w]ithin the Special District, at least 60 percent of the total floor area permitted on a zoning lot" must be below a height of 150 feet from curb level. There is no dispute that the project complied with ZR § 82-34. Practically speaking, this provision directly regulates the distribution of a building's floor area and indirectly regulates height by restricting much of a zoning lot's floor area to the part of a building below a cutoff. Every square foot that needs to be below the 150-foot ceiling to comply with ZR § 82-34 reduces the number of square feet that could be above it. That said, ZR § 82-34 does not set forth any language setting a fixed height limit (compare ZR § 23-662 [listing maximum height of buildings in feet for residential contextual districts][FN1]; ZR § 23-691 [listing maximum height for limited height districts]; ZR § 98-423 [listing maximum height for the subareas in Special West Chelsea District]; ZR § 62-354 [establishing a maximum height in feet and number of stories for certain residential district within a waterfront [*3]area in Brooklyn]). As noted by BSA, "the Special District's bulk-distribution regulations do operate to reduce the height of buildings in the Special District — only not to the extent [petitioner] wish[es]" (BSA Resolution, Sept. 17, 2019, BSA Cal. Nos. 2019-89-A and 2019-94-A). By its plain language and relying on Beekman Hill, BSA held that this regulation applies to both the R8 and the C4-7 zoning districts because it is located in a "Special District." Indeed, ZR § 82-34's language does not identify any delineating exceptions; it applies within the Special District regardless of subdistrict, street frontage, other designated location, or zoning district designation. ZR § 82-34's imposition of the bulk distribution regulation within the Special Lincoln Square District creates the commonality discussed in Beekman Hill so as to override the split-lot provision's prohibition against transfer of floor area between the two zoning districts, and permits the two zoning districts to be treated as one. Under these circumstances, we find that BSA's determination to apply ZR § 82-34 to the project's zoning lot was rational.
Petitioner fares no better with its argument that the phrase "[w]ithin the Special District" does not encompass the Special Lincoln Square District because it is ambiguous. Were this an issue of pure statutory reading and analysis, BSA's interpretation would have been accorded less weight (see Matter of Peyton v New York City Bd. of Stds. & Appeals, 36 NY3d 271, 280 [2020]). However, the interpretation of the "Special District" term entails an evaluation of factual data and inferences, and involves knowledge and understanding of underlying operational practices. BSA's finding that the Special Lincoln Square District is a ZR § 82-34 "Special District" was rational and therefore entitled to deference (id.).
BSA rationally rejected petitioner's argument that the bulk distribution regulation and the tower coverage regulation are inextricably linked and that the tower coverage regulation should be applied to the R8 zoning district. In contrast to the wording set forth in ZR § 82-34, supra, the language in ZR § 82-36, the tower coverage regulation, applies only in the C4-7 zoning district. BSA properly calculated compliance with the tower coverage regulation solely on the basis of the C4-7 zoning district of the zoning lot because ZR § 82-36 does not apply in R8 zoning districts. That calculation included BSA's express consideration of testimony and credible evidence in the form of architectural diagrams and examples of buildings in the vicinity (Matter of Peyton, 36 NY3d at 280 [deference to BSA is appropriate where it "entails an evaluation of factual data and inferences to be drawn therefrom"]).
Petitioner next argues that pursuant to ZR § 12-10 the project's floor-to-ceiling heights of its mechanical floor spaces, i.e., areas for mechanical equipment, do not qualify as floor space used for mechanical equipment so as to be exempt from [*4]floor-to-ceiling floor-area calculations. To be sure, ZR § 12-10, as amended, precludes deduction of floor-to-ceiling height for the mechanical areas from floor area calculations in certain zoning districts. In resolving this issue, BSA rationally relied on its precedent (see 15 East 30th Street, BSA Cal. No. 2016-4327-A [Sept. 20, 2017]) in ruling that when this project vested ZR § 12-10 did not control or regulate the height of the mechanical floor area (see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [rational for agency to act "consistent with its own rules and precedents"]) . Regardless, the project's foundation's completion prior to the effective date of ZR § 12-10's amendment permitted the project to proceed with construction as of right under ZR § 11-331. Thus, BSA's determination that ZR § 12-10, prior to its amendment, did not provide a basis for counting the height of the project's mechanical floor areas against the zoning lot's total permissible floor area was rational. We note that petitioner has challenged the amount of the project's floor space used for mechanical equipment as excessive or irregular in a separate proceeding. The merits of that challenge are not before us, and we offer no opinion thereon.
In light of the foregoing, we do not reach respondents' remaining arguments.
Accordingly, the judgment of the Supreme Court, New York County (Arthur F. Engoron, J.), entered November 18, 2020, granting, on the terms set forth in an order, same court and Justice, entered September 25, 2020, the petition brought pursuant to CPLR article 78 to annul the determination of respondent New York City Board of Standards and Appeals, dated October 15, 2019, which affirmed the issuance of a building permit by respondent New York City Department of Buildings allowing respondents Extell Development Company and West 66th Sponsor LLC to proceed with construction, and the appeal therefrom bringing up for review an order, same court and Justice, entered March 20, 2020, which denied respondents' motion to dismiss the petition, should be reversed, on the law, without costs, the judgment vacated, the petition denied, and the proceeding dismissed. The appeals from order, same court and Justice, entered September 25, 2020, which granted the petition and enjoined construction of a proposed building at 36 West 66th Street in Manhattan, should be dismissed, without costs, as subsumed in the appeal from the judgment.
Judgment, Supreme Court, New York County (Arthur F. Engoron, J.), entered November 18, 2020, granting, on the terms set forth in an order, same court and Justice, entered September 25, 2020, the petition brought pursuant to CPLR article 78 to annul the determination of respondent New York City Board of Standards and Appeals, dated October 15, 2019, which affirmed the issuance of a building permit, and the appeal therefrom bringing up for review an order, same court and Justice, entered March 20, 2020, reversed, on the law, without [*5]costs, the judgment vacated, the petition denied, and the proceeding dismissed. Appeals from order, same court and Justice, entered September 25, 2020, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Oing, J. All concur.
Gische, J.P., Kern, Oing, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: July 22, 2021



Footnotes

Footnote 1: A contextual district is one in which the goal of the regulations is to "produce buildings that are consistent with existing neighborhood character" (ZR Glossary of Zoning Terms).